IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>KEVIN T. CARNEY, JONATHAN D. FREEZE, AND ROBERT J. IREY,<br><br>Defendants. | Case No.  2:21-cv-720<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") files this Complaint against defendants Kevin T. Carney ("Carney"), Jonathan D. Freeze ("Freeze"), and Robert J. Irey ("Irey") (collectively, "Defendants") and alleges as follows:

## SUMMARY

1. This matter concerns an offering fraud orchestrated by Defendants who purported to raise money for the renewable energy company, Alternative Energy Holdings, LLC ("AEH"). Defendants were officers and managing members of AEH.

2. From June 2016 through February 2018, Defendants raised approximately $2.1 million from at least 25 investors through a fraudulent offering of securities in the form of at least 31 promissory notes, many of which included an equity component, issued from AEH or entities controlled by Irey.

3. Instead of investing the money as promised, Defendants used the majority of investor proceeds for their personal benefit and to repay at least one existing investor.

4. To induce investment in AEH, Defendants falsely told investors, among other things, that their money would be used for expenses related to a number of waste-to-energy projects in which AEH was involved.

5. Defendants also told prospective investors, many of whom were Freeze's broker-dealer customers and Freeze's and Irey's neighbors, that they each had personally invested in AEH when, in reality, they had not invested any of their own money in AEH.

6. Defendants further deceived investors by promising outsized returns on the promissory notes, despite the fact that AEH had no source of short-term revenue and no realistic expectation of making timely payments.

7. Instead of using the funds as promised, Defendants divided up investor proceeds, often immediately upon receipt, and used the funds to pay for personal expenses, including frequent casino visits, expensive clothing, meals, and vacations.

8. Carney also used investor funds to pay a portion of the criminal fine for his convictions of grand theft and forgery related to selling a promissory note in another energy venture—a fact which Defendants failed to disclose to investors.

9. By engaging in the conduct described in this Complaint, Defendants violated, and unless enjoined will continue to violate, Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## JURISDICTION AND VENUE

10. The Commission brings this action pursuant to Sections 20(b) and 20(d) of the Securities Act [15 U.S.C. §§ 77t(b) and 77t(d)] and Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78u(d) and 78u(e)] to enjoin such acts, transactions, practices, and courses of

business, and to obtain disgorgement, prejudgment interest, civil money penalties, and such other and further relief as the Court may deem just and appropriate.

11. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

12. Venue in this district is proper pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Defendants Freeze and Irey are believed to reside in this district. In addition, certain of the acts, practices, and courses of business constituting the violations of the federal securities laws alleged herein, including misstatements to potential investors, misuse of investor proceeds, and the sale of promissory notes, occurred within the Western District of Pennsylvania.

## **DEFENDANTS**

13. Kevin Carney is a resident of Euclid, Ohio. Carney is the Founder, Chief Executive Officer and Chief Business Development Officer of AEH, and a Co-Founder of Maxximus Group, LLC. In October 2016, Carney pleaded guilty in Ohio state court to grand theft and forgery in connection with a promissory note that he sold for Global Green Energy Partners, LLC, another company under his control.

14. Jonathan Freeze is believed to reside in the Western District of Pennsylvania. Freeze was AEH's Chief Investment Officer. From June 1995 until April 2017, Freeze worked as a registered representative and/or an investment advisor representative with a series of firms. The Financial Industry Regulatory Authority ("FINRA") barred Freeze on August 14, 2017.

15. Robert Irey is a resident of Clarksville, Pennsylvania. Irey was AEH's Chief Commercial Development Officer, a Co-Founder of Maxximus Group, LLC, the Founder and

3

President of The Irey Group, LLC ("TIG"), and Founder and President of ACES America, LLC ("ACES").

## FACTS

**I.  DEFENDANTS FRAUDULENTLY INDUCED INVESTORS TO BUY ALMOST $2.1 MILLION IN AEH PROMISSORY NOTES AND EQUITY**

16. Carney formed AEH in 2016 as a purported renewable energy company. In May of that year, AEH partnered with an energy company based in Washington, D.C. that possessed established waste-to-energy technology (the "Energy Company").

17. AEH was tasked with securing funding for the Energy Company's proposed waste-to-energy sites, each requiring approximately $130 million ("AEH-Energy Company Projects").

18. In the process of trying to fund an initial site in Greenville, South Carolina, Carney met Freeze, a registered representative, and Irey, who worked for an energy consulting group and claimed to have connections to several potential funding sources for the AEH-Energy Company Projects. Freeze and Irey joined AEH and became managing members.

19. In May 2016, an Irey-controlled entity, TIG, contracted with AEH to assist with raising funds for AEH-Energy Company Projects.

20. In or around June 2016, Defendants began selling promissory notes purportedly to support AEH's pursuit of funding for the AEH-Energy Company Projects.

21. Most of the promissory notes were between investors and AEH, but TIG and ACES, another Irey-controlled entity, were counterparties on seven promissory notes sold to investors. The promissory notes stated that the funds were for the benefit of AEH.

22. The majority of the promissory notes had 60-day terms with a median annualized promised return of 120%, and many included equity rights in the form of AEH Membership Units which Defendants and investors referred to as "stock," "shares," and "equity."

23. Freeze tapped into his broker-dealer customer base to solicit investors. He and Irey also targeted individuals who lived in their same apartment complex, most of whom were unsophisticated investors.

24. Defendants induced investors to purchase the promissory notes by making false statements to investors about the use of funds, the ability to pay large returns, Defendants' own investments in AEH, and failing to disclose Carney's criminal conviction in a similar fraud.

25. During the relevant time period, Defendants raised nearly $2.1 million from the sale of at least 31 promissory notes purportedly for the benefit of AEH.

26. Defendants caused investor funds to be placed into one of four AEH bank accounts (collectively, "AEH Accounts") which Defendants controlled.

**A.     Defendants Misrepresented How Investors' Money Would Be Used**

27. Many of the promissory notes Defendants offered and sold to investors contained a "Use of Proceeds" sections that stated AEH would use the proceeds for expenses related to the AEH-Energy Company Projects.

28. Despite the representations in the promissory notes about how investor funds would be used, Defendants used the majority of investor funds to pay for personal expenses like casino visits, restaurants, expensive clothing, and vacations.

29. Defendants also told investors that their investments with AEH would be used to pursue funding for the AEH-Energy Company Projects.

30. For example, in June 2016, an investor who was a broker-dealer customer of Freeze purchased an $180,000 promissory note from ACES that promised a 20% return on investment in four months.

31. Irey falsely told the investor that the money was needed for closing costs on the AEH-Energy Company Projects. No project was ever closed and the money was not used as promised.

32. Emails from Carney also falsely informed investors that their proceeds would be used for the AEH-Energy Company Projects.

33. For example, in a January 2017 email to an investor, Carney wrote, "our intent is to use these funds for our ongoing soft and pre-development cost, allowing us a 30-60 day jump on each of our current sites."

34. In February 2017, Carney told another investor that their money would be used for three categories of expenses: 1) a $50,000 engagement fee to a banking group to participate in a "carbon credit monetization program"; 2) travel and expenses to set up a second waste-to-energy site; and 3) legal and accounting expenses for the second site.

35. After both of these investors purchased promissory notes, most of their money was used to pay for Defendants' personal expenses unrelated to what Carney described, including rent, car payments, expensive clothes, credit card payments, and cash withdrawals at casino and racetrack locations.

36. In the majority of the promissory note transactions, Carney, Freeze, and Irey withdrew all or most of the investors' money immediately after it was deposited and divided it among themselves.

37.     Defendants relied on the money obtained through the sale of promissory notes as their primary source of income to pay for their personal expenses, as each Defendant had little money during the relevant time period.

38.     On May 9, 2017, Carney's, Freeze's, and Irey's personal bank accounts carried balances of $1,508, $22, and $104, respectively. The next day, an investment of $49,999 from the sale of a promissory note was deposited into an AEH bank account.

39.     On May 11, 2017, Freeze withdrew $45,000 in cash from that AEH bank account. That same day, Freeze, Carney, and Irey each deposited $15,000 into their respective personal accounts to pay for expenses unrelated to AEH-Energy Company Projects.

40.     In May 2018, Carney drafted documents called "Advance/Loan Against Future Earnings Promissory Agreements" (the "Agreements") in which he tracked investor funds diverted to himself, Irey, and Freeze, labeling the payments "advances."

41.     Although Carney labeled these payments to Defendants as "advances," the promissory notes did not provide for investor funds to be advanced to the Defendants.

42.     According to Carney's calculations in the Agreements, at least $1,307,500 of investor funds were taken by Defendants, including $414,620 of alleged "estimated advances" to Irey, $435,380 to Freeze, and $457,500 to Carney. Carney also listed in the Agreements a purported $592,500 of "estimated company advances."

**B.     Defendants Misrepresented the Ability to Pay the Promised High Returns on the Promissory Notes**

43.     Four months after Defendants began selling promissory notes in June 2016, AEH missed its first note repayment on October 1, 2016.

44.     By the end of 2016, AEH was past due on four promissory notes and owed investors more than $480,000.

45. By May 2017, not a single investor had been repaid and AEH was late on more than $1 million of payments due to investors.

46. Despite the inability to make any payments on existing promissory notes, Defendants continued to solicit AEH investments while promising large, short-term returns.

47. Defendants knew, or were reckless in not knowing, that AEH could not make payments within the terms of the promissory notes—particularly in light of the outstanding balances owed to investors and the lack of significant progress in meeting any funding goals for the AEH-Energy Company Projects.

48. AEH had no regular income stream. More than 90% of the funds flowing into the AEH Accounts were proceeds from the promissory notes.

49. Even if Defendants had financed deals for the AEH-Energy Company Projects, which they did not, Defendants could not close the deal and repay investors in accordance with the terms of the promissory notes, most of which required repayment within 60 days or less.

50. In July 2017, an investor purchased a $100,000 promissory note redeemable in 60 days with $50,000 of interest after Freeze assured the investor that AEH needed his money for only one week.

51. The $100,000 from the sale of the promissory note was deposited into an AEH bank account, which, prior to the deposit, had a balance of only $121.

52. On the same day that the investor purchased the promissory note, AEH owed more than $1.6 million to prior investors, had not repaid any prior investors, had no expectation of short-term income (other than the sale of promissory notes), and had only $121 in an AEH bank account.

53. Freeze knew, or was reckless in not knowing, that the investor could not be repaid in accordance with the terms of the promissory note.

54. In February 2018, Irey sent a prospective investor an email, drafted by Carney, that offered the investor $50,000 in interest on a $100,000 promissory note, with principal and interest to be repaid in full within 30 days.

55. The email also stated that the investor would receive $30,000 each month for 12 months, starting on March 4, 2018, for a total return on investment of $410,000.

56. The investor purchased the $100,000 promissory note and the funds from the sale were deposited into an AEH bank account, which, prior to the deposit, had a negative balance.

57. At this time, AEH owed more than $2 million in principal and interest to investors, had only repaid one investor $13,000, and had a negative balance of $842 in an AEH bank account.

58. Carney and Irey knew, or were reckless in not knowing, that there was no reasonable expectation that AEH could make these promised payments that would have totaled $410,000 in profits owed over the next twelve months—a return of more than four times the initial investment.

59. Defendants sold 26 promissory notes, raising over $1.4 million, while Defendants knew, or were reckless in not knowing, that they were past due in repaying prior investors.

60. Of the limited repayments that Defendants made to investors, none of the repayments used revenue from the AEH-Energy Company Projects. In fact, the AEH-Energy Company Projects never generated any revenue.

61. Defendants made at least one repayment to an existing investor using other investors' money in the form of a Ponzi-like payment.

62. Defendants repaid at least two other investors using money obtained from a previous AEH investor's loan to TIG.

C. **Defendants Misrepresented That They Had Invested Their Own Money in AEH and Failed to Disclose Carney's Criminal Conviction for a Similar Fraud**

63. In the course of soliciting investments in AEH during the relevant time period, Defendants falsely claimed to have made significant personal investments in AEH and the AEH-Energy Company Projects.

64. In or about early 2017, Defendants stated during a meeting with a prospective investor that each of them personally had invested in AEH.

65. In or around May 2016, Carney told an investor that he personally had invested $400,000, and that Irey personally had invested $200,000.

66. In or around May 2017, Carney told an investor that he personally had invested $1 million in AEH.

67. Freeze often told investors during the relevant time period that he invested $600,000 with AEH that he had received from a legal settlement.

68. None of these statements were true. The Defendants never invested in AEH.

69. In soliciting investments in AEH, Defendants falsely described to potential investors Carney's "decades of proven experience" in the renewable energy business.

70. Defendants failed to disclose, however, that in October 2016, Carney was convicted in Ohio of grand theft and forgery in connection with his solicitation of a promissory note in another alleged renewable energy company.

71. Carney used AEH investor money to pay a portion of his $5,000 criminal fine.

72. Defendants did not disclose this criminal matter or criminal sanctions as they were actively seeking AEH investors.

10

73. Defendants did not disclose to investors that any investor money would be used to pay Carney's criminal fine.

## II. DEFENDANTS VIOLATED THE FEDERAL SECURITIES LAWS

74. The promissory notes offered and sold by Defendants (the "Securities") were securities within the meaning of the Securities Act and the Exchange Act.

75. AEH investors provided Defendants with an investment of money—from June 2016 through February 2018 approximately 25 investors gave Defendants approximately $2.1 million.

76. Defendants pooled investors' money into the AEH Accounts and represented that they would use those funds to operate AEH and grow the business.

77. Investors considered the promissory notes to be investments and were interested in the profits the promissory notes were expected to generate. In fact, the investors and Defendants alike often referred to the promissory notes as "investments."

78. The promissory notes were not secured by accounts receivable, liens, or any other asset, and there is no other regulatory scheme that would reduce the risk associated the promissory notes.

79. Investors played no role in the management or operations of the business of AEH.

80. Investors made their investments with a reasonable expectation of profits to be derived solely from Defendants' supposed ability to generate profits without any participation by any of its investors.

81. Defendants engaged in the conduct described herein, including the offer and sale of the Securities, by use of the means or instruments of transportation or communication in interstate commerce, the instrumentalities of interstate commerce, and/or by use of the mails.

82. Defendants solicited investments from investors in at least seven states and through the use of the mails.

83. Defendants knowingly made material untrue statements and omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

84. A reasonable investor would consider the misrepresented facts and omitted information described herein—including, among other things, misrepresentations and omissions regarding the high rate of returns on investments, the ability to make payments to investors, Carney's criminal conviction for a similar fraud scheme, and the use of investors' money to pay for Defendants' personal expenses—important in deciding whether or not to purchase the Securities.

85. The untrue statements of material fact and material omissions described herein were made in the offer or sale and in connection with the purchase or sale of Securities.

86. In connection with the conduct described herein, Defendants acted knowingly or recklessly. Defendants knew, or were reckless in not knowing, that they were making material misrepresentations and omitting to state material facts necessary to make certain statements not misleading under the circumstances.

87. Defendants knew, or were reckless in not knowing, that investor funds were not being used as promised and that the Defendants had no reasonable basis to believe that they could repay investors in accordance with the terms of the promissory notes they were selling.

88. Defendants obtained money or property by means of untrue statements of material fact and omissions of material fact necessary in order to the make the statements made, in light

of the circumstances under which they were made, not misleading. Investors sent money directly to the Defendants, and Defendants took the money for their own use and benefit.

89. Defendants used devices, schemes, and artifices to defraud investors, and engaged in acts, transactions, practices, or courses of business that operated as a fraud or deceit upon the investors.

90. In addition to the numerous misrepresentations discussed herein, among other things, Defendants misled investors and misappropriated investors' funds for their personal use and benefit.

### FIRST CLAIM FOR RELIEF
### Violations of Section 17(a) of the Securities Act
### (Against All Defendants)

91. The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1 through 90, above, as if the same were fully set forth herein.

92. From at least June 2016 through February 2018, as a result of the conduct alleged herein, Defendants Carney, Freeze, and Irey knowingly or recklessly or, with respect to subparts b and c below, negligently, in the offer or sale of securities, directly or indirectly, singly or in concert, by the use of the means or instruments of transportation or communication in interstate commerce, or the means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange:

    a. employed devices, schemes or artifices to defraud;

    b. obtained money or property by means of, or made, untrue statements of material fact, or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

    c. engaged in acts, transactions, practices, or courses of business that operated as a fraud or deceit upon offerees, purchasers, and prospective purchasers of securities.

93. By engaging in the foregoing conduct, Defendants Carney, Freeze, and Irey violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

### SECOND CLAIM FOR RELIEF
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder
### (Against All Defendants)

94. The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 90, above, as if the same were fully set forth herein.

95. From at least June 2016 through February 2018, as a result of the conduct alleged herein, Defendants Carney, Freeze, and Irey, knowingly or recklessly, in connection with the purchase or sale of securities, directly or indirectly, by use of the means or instrumentality of interstate commerce or of the mails, or a facility of a national securities exchange:

    a. employed devices, schemes or artifices to defraud;

    b. made untrue statements of material fact, or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

    c. engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

96. By engaging in the foregoing conduct, Defendants Carney, Freeze, and Irey violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court enter a final judgment:

I.

Permanently restraining and enjoining Defendants Carney, Freeze, and Irey from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

II.

Ordering Defendants Carney, Freeze, and Irey to each disgorge any and all ill-gotten gains, together with prejudgment interest, derived from the activities set forth in this Complaint.

III.

Ordering Defendants Carney, Freeze, and Irey each to pay a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; and

IV.

Granting such other and further relief as the Court may deem just and appropriate.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Commission hereby requests that this case be tried to a jury.

Respectfully submitted,

SECURITIES AND EXCHANGE COMMISSION

Dated:  June 1, 2021

By: s/ Karen M. Klotz
Karen M. Klotz (PA88171) (*Pro Hac Vice* Motion to be filed*)*
Jennifer Chun Barry (PA72961) (*Pro Hac Vice* Motion to be filed)
Securities and Exchange Commission
1617 JFK Boulevard, Suite 520
Philadelphia, PA 19103
Telephone: (215) 597-3100
Email: klotzk@sec.gov
           barryj@sec.gov